THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ÁNGEL TORRES ROLÓN, Defendant and Appellant.

No. CR-70-23.        Decided May 18, 1971.

*José M. Sagardía Pérez* for appellant. *Gilberto Gierbolini, Solicitor General,* and *J. F. Rodríguez Rivera, Deputy Solicitor General,* for The People.

MR. JUSTICE RIGAU delivered the opinion of the Court.

Appellant was accused of a violation of § 8 of the Weapons Law—illegal carrying of a loaded firearm, felony; of a viola-

tion of § 6 of said Law—illegal possession of a firearm, misdemeanor; and of disturbing the public peace. 25 L.P.R.A. §§ 418 and 416, respectively, and 33 L.P.R.A. § 1439. He was convicted of the last two offenses and acquitted of the first.

He assigns three errors. The first consists in challenging the sufficiency of the evidence. He argues that the same is not sufficient to support beyond a reasonable doubt the two above-mentioned convictions.

The second assignment is to the effect that the court erred in not permitting appellant to challenge witness Francisco Escudero Orozco with oral statements previously made by said witness. The third error assigned consists in challenging the correctness of the instructions to the jury about breach of the peace.[1]

We agree with appellant as to the first assignment, but not as to the third. Because of the conclusion we have reached concerning the first error, it is not necessary for us to discuss the second.

The evidence for the prosecution consisted of the sworn statements of witnesses Francisco Escudero Orozco, policeman Héctor Orta, and Gilberto Rodríguez Ramos. The evidence for the defense consisted of appellant's sworn statement. The facts, as they arise from the transcript of evidence, may be summarized as follows. At about 8:00 p.m. of April 26, 1967, appellant was arguing in the street with another individual and since both had been drinking they did it in a high tone of voice and they were using obscene language. Appellant went into the business of Francisco Escudero Orozco and from there he kept on using said language. Escudero called his attention and appellant went down to

---

[1] Rule 111 of the Rules of Criminal Procedure provides that questions of fact in cases of felony and, except as provided by special statutes, in misdemeanor cases, provided that the information was originally filed in the Superior Court and was also within the jurisdiction of the District Court, shall be tried by jury unless the defendant waives the right to trial by jury.

the street. Escudero testified that from there appellant addressed obscene words to him. On the contrary, appellant denies that provocation and says that Escudero, who had a billiard cue in his hands, threatened to give him two strokes with the cue.

At a moment during that situation Escudero came down from his business and walked towards appellant. At that moment a police car was going by slowly. Appellant says that upon seeing the police Escudero became nervous and called them. The latter testified that he called the police. The automobile stopped and two policemen alighted from the same. Escudero testified that when the police stopped appellant took a pistol from his pocket and threw it away. Appellant denied that and testified that Escudero dropped a holster and that he, appellant, picked it up and kept it in his right hand until he handed it to the police. As soon as the policemen alighted, Escudero proceeded to take one of them to where the pistol was and policeman Orta picked it up.

Policeman Orta did not see that appellant possessed the pistol and he limited himself to testify that when he alighted from the automobile Escudero told him: "Come policeman, that I saw when he threw a pistol somewhere around here." The policeman and Escudero went to the place and there they found the pistol. The policeman, to questions of the prosecuting attorney, said that the pistol was "small." They did not care to describe it by its make, caliber and serial number.[2] The other witness for the prosecution, Gilberto Rodríguez Ramos, a friend or acquaintance of Escudero, testified that when appellant and Escudero were arguing, before the arrival of the police, appellant "put his hand on his chest and slipped

---

[2] One need not be an expert to describe a firearm thus. The general knowledge which a prosecuting attorney and a policeman should have on common firearms should allow them to describe them thus for the record. As a general rule, weapons have that information engraved and visible. At a glance you can see whether a revolver or a pistol is a 22 or 32, or 38 or 45 caliber. Those are the most common calibers.

944

it immediately to the right hand pocket" but he did not see anything else, but that he only saw "the movement he made from the chest to the pocket." Escudero always testified that appellant had his hand in his pocket and he never mentioned that appellant had placed his hand on his chest or taken anything from it.

When the policeman arrested appellant he seized the holster. The testimony of the policeman is doubtful in regard to whether appellant had the holster in the waist or in the hand. After the former testified that he seized the holster the dialogue went on as follows:

"Q. Where?

A. In the waist.

Q. What were you looking for?

A. That is, I looked for a holster he had *in his right hand, I seized it.*

Q. Was it visible?

A. No, sir.

Q. Where was it?

A. *Under a shirt he had.*

Q. Under a shirt he had?

A. Yes, sir.

Q. How was the holster?

A. A brown holster.

Q. Big or small?

A. Small.

Q. What is this I am showing you now?

A. A holster.

Q. That holster which you mention in your testimony and this one I am showing you now, is there any connection?

A. It is the same one.

Q. It is the same what?

A. The same holster he had.

Q. Where did he have it?

A. *In his waist.*

Q. Once you seized the holster, what did you do with the defendant?

A. I took him to the Río Piedras Police Station." Tr. Ev. I, 49–50. (Italics ours.)

There is also another inconsistency in the evidence for the prosecution. Escudero testified that when appellant was uttering the obscene words, a lady and two girls were at the place, and that they left as a result of appellant's dirty words. As to the age of the girls Escudero said "they must have been small, I didn't get a good glimpse of them, because the only thing I saw (was) the head." Tr. Ev. I, 29. However, the other witness for the prosecution, Gilberto Rodríguez Ramos, testified that there were two ladies and a girl in that place. He fixed the ages of the ladies between 35 and 40 years and that of the girl between 13 and 14 years. Tr. Ev. II, 11.

The defendant, in his testimony, admitted his argument on the street with another individual, he admitted that they had raised their voices in the argument, but he denied having used obscene words and he admitted that Escudero had told him to leave the business. He denied having taken a pistol to the place and having thrown it away. He said that Escudero had threatened to hit him with the cue. On that particular he testified the following:

"A. I answered him that he did not have to say that he was going to hit me with the cue because I didn't have anything, nothing against him and we had not argued or anything, and then I stayed there, and he went to the store, to the grocery store inside the store, and then when I saw him come out I remained on the lookout.

Q. From where did you see him coming out?

A. He came from the counter, from the store to the outside.

Q. The first thing that happened, where did it happen?

A. From the billiard room, and then he went with the cue and entered the grocery store, the store and came out immediately with the cue from the store, and came straight toward me, and when I saw him he was coming toward me, straight, he also saw the police and he was nervous, and he rushed, and instead of coming towards me he rushed to call the police. I saw him when he dropped something to the floor.

PROSECUTING ATTORNEY:

I did not hear.

JUDGE:

An object slipped to the floor.

MR. SAGARDIA:

Q. Where did that object fall?

A. By the edge of the door of the grocery store, in the grocery store.

Q. When he was going out?

A. When he was going out. When I saw it thus, I saw that it was that holster he had.

Q. He is referring to the exhibit.

Clerk:

Number 3.

JUDGE:

The holster.

A. I took it and I put it here in my right hand, let me see what happens, if something happens I have something to present if we go to Court.

Q. And then the police arrived?

A. The police arrived.

Q. They seized that holster from you?

A. When they seized it, I told the police myself that I had it as evidence." Tr. Ev. II, 25–27.

The holster in question had the initials F.E.O. which are the initials of Francisco Escudero Orozco. None of those letters agree with appellant's initials whose name is Ángel Torres Rolón. After defendant finished his testimony, the prosecuting attorney refused to question him.

■ In a word, nobody saw appellant carrying or bearing the firearm. It was nighttime but Escudero Orozco was able to lead the policeman to the place where the pistol was, which, according to him, appellant had thrown away. Appellant admits that he picked up the holster from the floor; he said that the same was dropped by Escudero; that he kept it in his right hand and that he himself handed it over to the policeman as evidence. The policeman's testimony does not connect appellant with the firearm. Neither does that of Gilberto Rodríguez Ramos. The testimony of the policeman concern-

ing the part of the body where appellant had the holster is confusing and contradictory. He said he seized it from appellant's right hand and he also said that appellant had it in his waist. Tr. Ev. I, 49–50.

The fact that the holster of the pistol had the initials of Francisco Escudero Orozco is very suspicious. The evidence for the prosecution is very weak and contradictory. It is insufficient at law for a conviction on § 6 of the Weapons Law. It is possible that appellant was the one spared from suffering serious bodily injury because of the coincidence that at the moment when Escudero Orozco was coming out of the business with a billiard cue in his hands the automobile of the police was going by.

The first error assigned was committed and it is proper to reverse the judgment which convicted him for a violation of § 6 of the Weapons Law and acquit him from said charge. As we said before, it is not necessary to consider the second assignment of error because of the conclusion we have reached as to the first one.

■ The third assignment refers to the instructions to the jury on the offense of breach of the peace. The assignment is untimely. When the magistrate asked whether they wanted special instructions or whether they wanted to raise any other contention, the defense did not raise objection to the instructions nor did it request additional instructions. *People* v. *Del Valle*, 91 P.R.R. 167, 172 (1964). Besides, we have examined the instructions, the information, and the pertinent section of the Penal Code, § 368, 33 L.P.R.A. § 1439, and we found that the instructions were sufficient.

■ The sentence of the trial court imposed upon the defendant for the offense of breach of the peace is erroneous because it exceeded the maximum fixed by law. The aforementioned § 368 of the Penal Code provides for said offense a fine not exceeding $200 or imprisonment in jail for not more than 90 days, or both fine and imprisonment, at the discretion

948

of the court. The court sentenced appellant to six months in jail for said offense. We must correct said sentence. In view of the circumstances of the case, we shall fix the same at a $50 fine.